IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JENNIFER LYNN PARKER,  )
  )
      Plaintiff,  )
  )
  -vs-  )   Civil Action No. 16-271
  )
NANCY A. BERRYHILL,[1]  )
ACTING COMMISSIONER OF SOCIAL SECURITY )
  )
      Defendant.  )

AMBROSE, Senior District Judge

## OPINION

Plaintiff Jennifer Lynn Parker ("Parker") brings this action pursuant to 42 U.S.C. § 405(g) for review of the ALJ's decision denying a claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 1318-1383. Parker alleges a disability beginning on September 13, 2012. (R. 30) She contends that she suffers from both physical and mental impairments which preclude her from engaging in substantial gainful activity. Following a hearing, the ALJ denied Parker's claim. Specifically, the ALJ concluded that Parker retained the residual functional capacity to perform certain types of medium range work. Parker then appealed, raising multiple arguments. Pending are Cross Motions for Summary Judgment. ECF docket no. 11 and ECF docket no. 13. For the reasons set forth below, the case is remanded for further consideration.

    **A.**    **Standard of Review**

---

[1] Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments

prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### B. Waiver of Representation and Duty to Develop the Record

Parker (who is now represented by counsel) argues that the ALJ failed to properly advise her regarding her right to representation at the administrative hearing. She also contends that he failed to adequately develop the record. ECF docket no. 12, pp. 6-11. As a result, Parker submits that remand is required. After a review of the record, I agree.

There is no constitutional right to counsel at a social security hearing. *Phifer v. Comm. Of Soc. Sec.,* 84 Fed. Appx. 189, 190 (3d Cir. 2003). During such a hearing, however, a plaintiff does have a statutory right to representation, which may be waived. *Id.,* at p. 190; 42 U.S.C. §406; 20 C.F.R. §§404.1700-07. According to the Third Circuit:

> The claimant must be given notice of the right to counsel and can waive this right only by a knowing and intelligent waiver. (footnote omitted) *See, e.g., Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). Moreover, where a claimant is *pro se*, the ALJ has a duty to help the claimant develop the administrative record and "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (internal quotations omitted). Although an ALJ may deny a *pro se* claimant benefits, it is appropriate for a reviewing court to remand a case if there is "a showing of clear prejudice or unfairness at the administrative hearing."

3

*Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979); *see also Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980) ("[I]f it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal."). A determination of whether the claimant waived the right to counsel knowingly and intelligently determines who has the burden of demonstrating whether remand is appropriate. As the Court of Appeals for the Seventh Circuit has explained, "[i]f the ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to show the ALJ adequately developed the record." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). "While a claimant represented by counsel is presumed to have made his best case before the ALJ, no such presumption attaches to an unrepresented claimant." *Id.* "Without the shifting of this burden, no sanction would exist for an ALJ's inadequate explanation of a claimant's rights." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

*Vivaritas v. Commissioner of Social Security*, 264 Fed. Appx. 155, 157-58 (3d Cir. 2008).[2] Thus, if Parker did not knowingly and voluntarily waive her right to representation, then the ALJ bears the burden of demonstrating that the record was adequately developed. His duty in this instance is heightened:

> [p]rejudice to *pro se* claimants can arise in circumstances outside of those found in cases in which claimants are represented by counsel. When a *pro se* claimant waives his or her right to counsel, the ALJ presiding over the claimant's hearing has a heightened duty to help develop the record that goes beyond the base 'duty to investigate the facts and develop the arguments both for and against granting benefits. *Sims v. Apfel*, 530 U.S. 103, 120, 120 S.Ct. 2080, 147 L. Ed.2d 80 (2000). The ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (*quoting Key v. Heckler*, 754 F.2d 1545, 1551) (9th Cir. 1985)). The *pro se* claimant may be prejudiced by the ALJ's failure to observe this heightened duty. *Dobrowolsky*, 606 F.2d at 407. Thus, "if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal." *Livingston*, 614 F.3d at 345; *see also Kummer*, 2013 WL 5467067 at * 3 ("The court may find a proceeding unfair where the ALJ does not develop a complete record and the essential inquiry is whether 'the incomplete record reveals evidentiary gaps which result in prejudice to the claimant.'" (*quoting Gauthnney v. Shalala*, 890 F. Supp.

---

2 Parker relies upon the decision in *Gullett v. Chater*, 973 F. Supp. 614, 620 (E.D. Tex. 1997) for the proposition that the ALJ failed to obtain a valid waiver of counsel in the instant case because a valid waiver requires a court to notify a social security claimant with respect to: "1. The manner in which an attorney can aid in the proceedings; 2. The possibility of free counsel or a contingency arrangement; 2. Limitations on attorney's fee to 25 percent of past due benefits and require Court approval of the fees." See ECF docket no. 12, p. 7. However, the Third Circuit Court of Appeals has not adopted the *Gullett* decision or the tenets espoused therein. Rather, as stated above, in Pennsylvania, a waiver is valid as long as it is "knowing" and "intelligent" and a remand is required only where "the lack of counsel prejudices a claimant or where the lack of counsel leads to an administrative proceeding marked by unfairness*." Phifer v. Comm. Of Soc. Sec.*, 84 Fed. Appx. 189, 190 (3d Cir. 2003).

4

401, 410 (E.D. Pa. 1995))).

George v. Commissioner of Soc. Sec., Civ No. 13-5179, 2014 WL 3955071 at * 4 (D. N.Y. Aug. 13 (2014).

Turning to the first inquiry – whether Parker knowingly and intelligently waived her right to representation, the record demonstrates that Parker was notified of her right to representation, in writing, on several occasions prior to the hearing. (R. 142-146, 148, 149-50) Additionally, the Commissioner supplied Parker with list of organizations with addresses and telephone numbers that could help Plaintiff secure legal representation. (R. 154-157) On January 13, 2014, the Commissioner notified Parker of her hearing date and again informed Plaintiff of her right to representation and provided the same "Your Right To Representation" document outlining Plaintiff's rights to representation. (R. 184-191) Finally, during the March 7th hearing, the ALJ again informed her of her right to representation and offered to postpone the hearing until she secured counsel.

If Parker presented a case dealing strictly with physical impairments, I would likely find that the ALJ's colloquy regarding waiver together with the numerous documents sent to Parker informing her of her right to counsel, was sufficient to secure a knowing and intelligent waiver. See Vivaritas, 264 Fed. Appx. at 159. But this case presents a more unique set of facts. Parker alleges, and indeed it seems largely undisputed, that she has a diminished intellectual capacity. Dr. Uran, a consultative examiner, opined that Parker had a history of special education placement and an educational disadvantage given the "cessation of school post grade 11." (R. 456-457) He also noted that Parker had "below average to borderline intelligence" and had a verbal comprehension index of 70 (borderline). (R. 458).[3] The ALJ acknowledged the validity of Dr. Uran's testing. (R. 36) During the hearing, the ALJ and Parker engaged in a colloquy

---
[3] Dr. Uran noted that the he found no reason to question the tests results and he believed them to be valid. (R. 458)

regarding her right to representation. As part of that exchange, Parker stated "I understand what you're saying and usually, I'm kind of surprised, *usually I have to ask someone twice to explain it to me*, but I understand." She later stated, "*I'm a bit slower. I probably wouldn't be able to understand it like you would with your degree*. I'm happy … that I can understand your speaking." (R. 66-69) (emphasis added). Dr. Uran's report, together with Parker's testimony at the hearing, "should have called into question her ability to waiver her right to counsel." *George v. Commissioner of Social Security*, Civ. No., 13-5179, 2014 WL 3955071 at * 3 (D.N.J. Aug. 13, 2014). Reviewing the record as a whole, I find that Parker did not knowingly and intelligently waive her right to representation.

In so finding, I find persuasive the decision in *Vivaritas v. Commissioner of Social Security, 264 Fed. Appx. 155 (3d Cir. 2008)*, where the Third Circuit Court of Appeals found that an otherwise knowing and intelligent waiver colloquy did not pass muster where the claimant "later testified at the hearing that she suffered from mental limitations, although the extent of her limitations was unclear at the time of her testimony." *Vivaritas*, 264 Fed. Appx. at 159. In response to a question about her mental limitations, the claimant stated that she was "slower" than other people, that she had always been a little slow at learning things and that she had been in "special ed". *Id.* The claimant's hearing testimony prompted the ALJ to secure a consultative examination. A subsequent evaluation yielded a Performance IQ score of 67, a Full Scale IQ score of 67 and a Verbal IQ score of 72. *Id.*, at 159. The Third Circuit Court noted that "[a]lthough it was an open question during the hearing whether Vivaritas' mental limitations qualified her for disability benefits, her testimony regarding those limitations, particularly when the subsequent evaluations by Dr. Candela supported her testimony, should have given the ALJ concerns as to whether her explanation to Vivaritas of her right to counsel was sufficient and whether Vivaritas' waiver of that right as knowing and intelligent." *Id. See also George v. Commissioner of Social Sec.*, Civ. No. 13-5179, 2014 WL 3955071 at * 2-3 (D. N.J. Aug. 13,

2014) (finding that the claimant's testimony at the hearing regarding her low level of education, her anxiety toward the proceeding, coupled with the ALJ's knowledge that she was being tested for a learning disability, "should have called into question her ability to waive her right to counsel") Here, as stated above, Parker testified that she had been in special education classes in school. Further, the ALJ had Dr. Uran's report which documented "borderline intelligence" and assessed her at a verbal comprehension score of 70. Additionally, during the hearing Parker made several comments indicating that she routinely had difficulty understanding people and stating that she was "slow." Thus, I find, that "despite the ALJ's facially proper colloquy on the right to counsel, [Parker's] low IQ scores and limited intellectual functioning prevented her from knowingly and intelligently waiving her right to counsel." *Id.*

Yet the lack of a valid waiver does not end the inquiry. As stated above, remand is appropriate where the administrative proceedings were marked by unfairness or where the lack of counsel prejudiced the claimant. See *Vivaritas*, 264 Fed. Appx. at 158. I agree with Parker that the record demonstrates that the ALJ failed to adequately develop the record and that such failure caused Parker prejudice. The prejudice is manifested with respect to the ALJ's consideration of whether or not Parker satisfied the requirements of the Listings. In step 3 of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appx. 1. *Jesurum v. Sec. of Health and Human Serv.*, 48 F.3d 114, 117 (3d Cir. 1995). An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. *Burnett v. Commr. of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). At issue in this case is Listing 12.05C (intellectual disability). Listing 12.05C provides, in relevant part:

> Intellectual disability refers to significantly subaverage general intellectual function with deficits in adaptive function initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A,B,C, or

7

> D are satisfied.
> …
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation or function. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.05. As the disjunctive language of the Listing indicates, the required level of severity for this disorder is met when the requirements of both the introductory paragraph and paragraph C in this case, are satisfied.

20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.05. Here, the ALJ recognized that "the results of Dr. Uran's testing, namely the claimant's verbal comprehension index seemingly satisfies the criteria of 12.05C," but he found that Parker failed to satisfy the "capsule" definition because she did not demonstrate that "she has subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period in order to establish disability under Listing 12.05C." (R. 36)

It is the ALJ's failure to adequately develop the record with respect to this "capsule" definition that requires remand. The ALJ acknowledged that Parker testified that she took "special education classes from the 6th to 8th grades" but noted that she also stated that she took "honors courses" while in high school." (R. 36) He found that the reference to "honors courses," together with certain of Dr. Uran's findings and Parker's ability to hold two long-term positions in the sales industry demonstrated that Parker failed to satisfy the capsule definition of § 12.05C.[4]

---

[4] I note that the parties disagree as to whether the capsule definition requires Parker to demonstrate "deficits in adaptive functioning" as an additional requirement under Listing 12.05C. The Commissioner urges that Parker must, and cites to the decision rendered in *Gist v. Barnhart*, 67 Fed. Appx. 78, 81 (3d Cir. 2003). Parker disagrees, citing *Brown v. Comm'r. of Soc. Sec.*, Civ. No. 8-1265, 2009 WL 3087220 at * 11 (W.D. Pa. Sept. 23, 2009) (Conti., C.J.). I need not resolve that issue at this time. Even if "deficits of adaptive functioning" is an additional requirement, the ALJ's analysis is wanting. The Regulations do not define that phrase but the Social Security Administration has issued a regulation entitled "Technical Revisions to Medical Criteria for Determinations of Disability", 67 FR 20018-01 (April 24, 2002). *See also Logan v. Astrue*, 2008 WL 4279820 at * 8 (W.D. Pa. Sept. 16, 2008). The SSA references four different definitions utilized by each of the major professional organizations in the United States that deal with intellectual impairments. "These various definitions all require significant deficits in intellectual functioning, but differ as to the age of onset and the method of measuring the required deficits in adaptive functioning." *Lansdowne v. Astrue*, Civ. No. 11-487 (W.D. Pa. Sept. 17, 2012). The SSA did not endorse any particular methodology but provided that "to assess a claimant's alleged mental retardation to determine if deficits in adaptive functioning exist, an ALJ should consult either the A[merican Psychiatric Association]'s D[iagnostic and Statistical Manual of Mental Disorders], the standard set forth by the A[merican Association on Mental Retardation]

8

Significantly, however, the ALJ did not obtain Parker's school transcripts. Given Dr. Uran's report indicating Parker's borderline intellectual range, and Parker's own statement that she had been enrolled in special education classes, certainly her school records could have shed light on the question of whether she had been formally diagnosed with an intellectual impairment prior to the age of 22. Further, there is case law indicating that the activities upon which the ALJ relies as evidence of proving an absence in deficits in adaptive functioning, are not necessarily inconsistent with a finding of "deficits in adaptive functioning. *See Markle v. Barnhart,* 324 F.3d 182, 187 (3d Cir. 2003) (finding that a claimant's "ability to pay his own bills, add and subtract, use an ATM machine and to take care of all his own personal needs; [his] ability to identify and administer his medication; his previous jobs; [and] his obtaining a GED" are "not inconsistent with qualifying mental retardation").

Accordingly, for the reasons set forth above, I find that a remand is required because the ALJ failed to obtain a knowing and voluntary a waiver of the right to counsel due to Parker's intellectual deficits and, furthermore, that the absence of counsel resulted in prejudice. The ALJ failed to fully and fairly develop the record with respect to evidence relevant to Listing 12.05C; more specifically whether Parker satisfied the capsule definition. On remand the ALJ shall develop the record further. As a practical matter, it appears that Parker has obtained counsel so that efforts to remediate the waiver of counsel issue should be addressed and counsel should be able to aid her in fully developing the record with respect to her school records and anything else relevant to satisfying the capsule definition of Listing 12.05C.[5]

---

or the other criteria of the other major professional organizations that deal with mental retardation." *Id.* Here the ALJ failed to discharge any of those duties. I am left without any guidance as to how the ALJ defined "deficits in adaptive functioning." Meaningful review would thus be precluded even if the record had been fully developed. Remand would have been required if I had reached the issue of deficits in adaptive functioning. *See Lansdowne,* 2012 WL 4069363 at * 5 (finding that it was not "clear from the ALJ's decision which organization's standard for measuring deficits in adaptive functioning, if any, he consulted in concluding that plaintiff" did not have any).

[5] Because I find that Parker did not knowingly and voluntarily waive counsel, and given her diminished intellectual capacity, I find that the best approach is to decline ruling on Parker's other issues on appeal. Moreover, the ALJ's

decision not to find her back impairment to constitute a "severe impairment" at the second step of the analysis, at this stage, appears to be nothing more than "harmless error." *See Salles v. Commr. of Soc. Sec.*, 229 Fed. Appx. 140, 145 n. 2 (stating that, "[b]ecause the ALJ found in Salles's favor at step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."). Further, Parker's other argument concerns the Commissioner's decision with respect to an application related to a different period of time than that at issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JENNIFER LYNN PARKER,  )
  )
    Plaintiff,  )
  )
 -vs-  )   Civil Action No. 16-271
  )
CAROLYN W. COLVIN,  )
COMMISSIONER OF SOCIAL SECURITY,  )
  )
    Defendant.  )

AMBROSE, Senior District Judge

## ORDER OF COURT

THEREFORE, this 16th day of March, 2017 it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 11) is GRANTED and Defendant's Motion for Summary Judgment (Docket No. 13) is DENIED. This action is REMANDED for further action as more fully set forth in the accompanying Opinion.

BY THE COURT:

s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge